LAKE SUPERIOR PRODUCE & COLD STORAGE COMPANY v. CONCORDIA FIRE INSURANCE COMPANY.[1]

July 28, 1905.

Nos. 14,362—(184).

**Insurance—Accord and Satisfaction.**

In an action brought to recover on an insurance policy, where the defense attempted to show that there had been a settlement and adjustment between plaintiff and the three companies, including itself, whose policies covered the property destroyed, *held* upon the facts:

1. That under the strict terms of the policies the taking of subsequent insurance after the first was a breach of the conditions of the policy issued by that company.

[1] Reported in 104 N. W. 560.

2. That there was no sufficient evidence of the mutuality of the arrangement between the three companies and plaintiff to establish a settlement which would be an accord and satisfaction at law.

3. An ambiguous statement of the court in its instructions to the jury that there had been a settlement was not prejudicial to defendant.

4. That the evidence in other respects sustains the verdict.

Appeal by defendant from an order of the district court for Hennepin county, Holt, J., denying a motion for judgment notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiff for $824.32.   Affirmed.

*Cohen, Atwater & Shaw*, for appellant.

*Brown & Kerr,* for respondent.

LOVELY, J.[2]

This action is to recover on a policy of insurance for merchandise of plaintiff destroyed by fire in its warehouse at Minneapolis November 30, 1901. It was tried to the court and jury. There was a verdict for plaintiff; afterwards a motion for judgment notwithstanding the verdict or for a new trial. The court denied the blended motion. Defendant appeals.

The plaintiffs were warehousemen storing eggs, butter, and cheese, and had three standard Minnesota policies of insurance on stock either as owners or in trust. One was issued by the Caledonian Fire Insurance Company on "eggs and egg cases" for $2,000, dated May 20, 1901. This policy provided that no other insurance should be permitted without the consent of the company, and no consent was ever given. Another by defendant Concordia Fire Insurance Company for $1,000, issued August 5, 1901, insuring in terms "merchandise." One in the Citizens' Insurance Company of the same date and for $1,200, describing property designated in the same terms as the Concordia. The fire occurred on November 30, 1901, destroying a large number of eggs, and a quantity of butter in store. Immediately thereafter the adjusters of the Concordia and Citizens' Insurance companies denied any liability for the eggs destroyed, claiming, in substance, that, while there was a liability against the Caledonian Insurance Company for eggs, that the

[2] START, C. J., absent, took no part.

two policies written subsequently were intended to cover butter alone,. and that, so far as the description "merchandise" in those policies applied, it did not cover both butter and eggs.

It must also be remembered that the conditions of the Caledonian policy had, as seems clear, been violated in terms by the insurers in. obtaining insurance in the Concordia and Citizens"; hence, upon strict legal grounds, that there was no liability upon that contract. But there was considerable discussion between the adjusters representing the three companies and the representatives of plaintiff upon this subject;. the defendant's adjuster claiming that it was liable only for the butter, which liability he was willing to settle and liquidate. The Caledonian. Company claimed that it was not liable at all, though efforts were made to secure a settlement of such amounts as could be agreed upon, the defendant and the Citizens' Company being willing to account for the butter; and there was some evidence tending to show that the Caledonian Company was at that time ready to accept the proposition that it. should pay for a share on the loss of the eggs, but a careful and critical review of the entire testimony leads us to the conclusion that there was no such mutual agreement between all the parties concerned, including plaintiff's representatives and the three insurance companies,. whereby a settlement was actually made to cover the entire loss sustained by the plaintiff, which was its own principal purpose. The discussion of the adjusters was tentative during the time, and did not reach the point of a settlement, nor was an adjustment concluded in any effective way so as to fix a liability for an accord and satisfaction.

The defendant was quite anxious, apparently, to relieve itself from responsibility on the eggs, for which it was liable under the strict terms of the policy, and prepared proofs of loss on the butter, had them signed by the insured, and no other proofs of loss were ever submitted, although required by the terms of the policy. Immediately after the proofs of loss were thus made out and returned, defendant also forwarded drafts covering the loss on the butter, $370.50, to the plaintiff. Plaintiff apparently cared very little which company paid its loss, so that it was paid in full; but soon after discovered that the Caledonian would not contribute according to claims of the defendant and the Citizens', and notified the defendant of this fact, but retained the drafts referred to, hoping that an adjustment would be finally effected. This. state of affairs continued for three and a half years, until the time of

the trial, when the drafts, which had never been collected, were returned into court, and suit brought on the defendant's policy.  There was a recovery, the liability of the Citizens' being made by agreement dependent upon that established against the defendant.

After the evidence had been received, the trial court, in its instruction to the jury, used the following language:

> The defense set up * * * is that the loss covered by the policies in question has been adjusted; * * * that there has been a settlement and payment, or * * * accord and satisfaction.  If that defense has been made out by a fair preponderance of evidence, you need go no further in your consideration, that your verdict must be for the defendants. * * * It is undisputed that the parties soon after the fire came to an understanding that the defendant should pay the plaintiff the sum of $370.-50, and that thereupon the plaintiff should return the policies to the defendants; * * * and it also appears that thereafter, about * * * December 19, 1901, the defendants sent plaintiff a draft. * * * It also appears that in about one month thereafter the plaintiff notified the defendants that it would not accept the paper in payment unless in the future some other insurance was adjusted; that is, with the Caledonian Company.

We are under the decided impression from the record that the court in this statement understood that he was referring to the butter adjustment; but whether this construction of the language thus used could be adopted or he went beyond this is immaterial, for, if this were so, and the court charged the jury that there was a full settlement of all claims and an adjustment thereof, it certainly could not have been prejudicial to the defendant in this case, for the court left it to the jury to find either for or against the plaintiff generally, stating that it was still an open question whether there was a consideration for an agreement of settlement, and the jury found against defendant, also, upon three special facts, viz., the value of the butter, the value of the eggs, and that there was no consideration.

Our examination of the record leads us to the conclusion that the general verdict must be sustained.  Involved in this finding is the fact that there was no settlement made by which the Concordia or

'Citizens' were relieved from any part of their liability, and, whether it be true or not that these two companies were liable on the agreement for the settlement, there was no such concurrence of all as would justify an action on such settlement. With reference to the proofs of loss against the Concordia and Citizens', the adjuster of these companies prepared the same, and knew what the controversy was, and it is not too much to say under such circumstances that this conduct amounted to a waiver of the requirements in the standard Minnesota policy requiring such proofs to be submitted within a specified time.

The fact that the drafts issued by the two companies were sent to the plaintiff and retained presents a more troublesome question, but it is apparent from the correspondence between the parties that the plaintiff, as soon as it was discovered that the Caledonian Company would not carry out the arrangement for the benefit, presumably, of the other companies, the latter, to secure their own rights, held these drafts, hoping the claims might be eventually settled; and we see no equitable and just reason why it should be regarded as a payment.

We have examined other alleged errors assigned by the defendant in this case, and are clearly of the opinion that none of them merit distinctive consideration.

The order appealed from is affirmed.